JOHN C. KELLY v. GEORGE E. WESTCOTT, Appellant.

**Principal and Agent:** MISTAKE.  A contract for sale of a lot required the lot to be clear of all incumbrances, except special assessments, *which were to be deducted from the cash payment.*  Before the contract was made, one D. learned from the vendee that he would buy the lot, and then induced the vender to allow him to sell it for twenty-two thousand five hundred dollars, and allow him five hundred dollars of it to pay the special assessments and his commission.  He afterwards acted as much for the vendee as for the vender, and neither gave him any general authority.  When the contract was made the vendee paid five hundred dollars to D. who agreed that such assessments should be paid out of the first, or cash payment.  When the deed was made the vendee paid the vender seven thousand dollars, the balance of the cash payment.  Neither D. nor the vender paid such assessments.  *Held*, that the *vender* was not liable to the vendee for the amount of the assessments, in the absence of authority to D. to make vender liable by a promise to pay them.

*Appeal from Woodbury District Court.*—HON. F. R. GAYNOR, Judge.

WEDNESDAY, JANUARY 29, 1896.

ACTION to recover the amount of certain assessments on real estate sold by the defendant to the plaintiff.  The cause was tried as in equity, and a judgment was rendered in favor of the plaintiff for four hundred and sixteen dollars and eight cents, and costs.  The defendant appeals.—*Reversed.*

*Wright, Hubbard & Bevington* for appellant.

*T. P. Murphy* for appellee.

ROBINSON, J.—On the fourth day of June, 1889, the defendant made and delivered to the plaintiff an instrument in writing, of which the following is a

copy: "I, George E. Westcott, have this day bar-
gained and sold to John C. Kelly lot 9, block 10,
Sioux City, East addition, Woodbury county, Iowa,
on the following terms and conditions: Seven thou-
sand five hundred dollars cash on delivery of· deed,
and three promissory notes of five thousand dollars
each, respectively, in one, two and three years, with
eight per cent interest, to be secured by mortgage on
said property. I agree to furnish abstract showing
perfect title and transfer by warranty deed. Said
property to be clear of all liens and incumbrances,
except special assessments, which shall be deducted
from above seven thousand five hundred dollars cash
payment. The above property is sold, subject to lease
on same, to C. J. Chamberlain. Geo. E. Westcott,
June 4, 1888." On the instrument is indorsed the
following: "Received check for five hundred dollars
on the within contract, which is to be deducted from
the first cash payment. Geo. E. Westcott." About
two weeks later the plaintiff paid the defendant seven
thousand dollars by check, and received from him a
deed for the lot. The deed recited a consideration of
twenty-two thousand five hundred dollars, and con-
tained covenants of title and warranty, excepting as
to all special assessments, to which the deed was made
subject. When the contract of sale was made, there
were special assessments on the lot to the amount of
three hundred and thirty-six dollars and forty cents,
which have not been paid. The petition alleges that
the contract between the parties required that the
amount of the assessments be deducted from the cash
payment; that when the payment of five hundred dol-
lars was made, the agent of the defendant represented
to the plaintiff that the special assessments would be
paid from the cash payment; that, relying upon the
statements of the agent, the plaintiff did not deduct
the amount of the assessments from the seven

thousand dollars, and that when that was made and the deed was delivered it was mutually understood between the parties that the agent of the defendant had paid the special assessments. The defendant denies all liability for the special assessments, and avers that Dunbar, the man who is charged to have represented him, was in fact the agent of the plaintiff, and was to pay the special assessments from the five hundred dollars payment. It appears that the sale of the lot was effected through the instrumentality of Dunbar. He was not formally employed by either party. A person who is not shown to have had any interest in the lot, nor any business connection with its owner, suggested to Dunbar that he see the plaintiff in regard to the lot. Acting upon that suggestion, Dunbar saw Kelly, who said that if the lot "could be bought at a proper figure he thought he would buy it." At that time Dunbar had not seen Westcott in regard to the lot, and in fact was not known to him; but, after seeing Kelly, Dunbar saw Westcott and tried to obtain terms on the lot which Kelly would accept. The price first asked was twenty-five thousand dollars, but after some negotiations, which were carried on through Dunbar, Westcott agreed to sell the lot for twenty-two thousand five hundred dollars. At that time he did not know to whom Dunbar was trying to make the sale. Westcott finally agreed to take the amount last stated for the lot, and to allow Dunbar five hundred dollars of it to pay the special assessments and his commission. Dunbar testifies that Westcott represented that the special assessments would not exceed one hundred and fifty dollars, but that is denied by Westcott, and is not established by the evidence. It is claimed by Dunbar that he told Kelly what Westcott said about deducting the special assessments from the commission, and that he would have to look to Kelly for the remainder of his commission, and that

Kelly finally authorized him to close the transaction on that basis. It is clear that Westcott did not agree to pay the special assessments, excepting as their amount should be deducted from the first payment of five hundred dollars, and we are of the opinion that the plaintiff has failed to sustain the averments of his petition, to the effect that the agent of the defendant represented to him, when the first payment was made, that the special assessments would be satisfied from it. It is insisted by the appellee, however, that this is an action to recover money paid by mistake; but, if that be conceded, we do not think the proof sustains his claim that money was paid under a mistake of fact. The plaintiff testifies that "Dunbar had agreed, on behalf of his principal, that the special assessments should be paid out of the first or cash payment. He agreed to pay them on receipt of the money," and that the first payment of five hundred dollars was made to Dunbar. If the plaintiff relied upon what Dunbar said in making the payments, he relied, not upon a representation as to an existing fact, but upon a promise to perform an act. He had before him the contract of the defendant, which provided that the special assessments should be deducted from the first payment, not that they should be paid by the defendant. The last payment was made to the defendant in person, and the deed was delivered by him. Although it was made subject to the assessments, which, according to the claims of the plaintiff, should have been paid nearly two weeks before, nothing was said in regard to them. It thus appears that the money was paid, not under a mistake of fact, but, if the claim of the plaintiff be well founded, upon the promise of Dunbar to pay the special assessments. It is insisted that Dunbar was the agent of the defendant, and that the latter was bound by the promise of the payment made. It is at least doubtful if the petition seeks a

recovery for a breach of contract, but, without deciding that it does, we may say that it was not shown that Dunbar was authorized to make the defendant liable by a promise to pay the assessments. Dunbar acted as much for the plaintiff as for the defendant, and neither gave him any general authority in regard to the sale and purchase of the lot. His agency for each was special; therefore each was required to ascertain the extent of his power to bind the other. The case is not within the rule of *Eadie v. Ashbaugh*, 44 Iowa, 519; *Milligan v. Davis*, 49 Iowa, 126, and similar cases. The defendant had not authorized Dunbar to contract for him to pay the special assessments, and the plaintiff had no sufficient reasons for believing that he had. The plaintiff relied upon the promise of Dunbar, which, at most, only made himself liable, and must look to him for performance. We conclude that the judgment of the district court is erroneous and it is REVERSED.